COURT'S
EXHIBIT NO. 1
IDENTIFICATION/EVIDENCE
DKT.#
DATE: 09/29/2016

WMP/JPL/LRT:JPM/JPL/DP
F. #2012R01716

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    PLEA AGREEMENT

   - against -                              Cr. No. 16-515 (NGG)

OZ AFRICA MANAGEMENT GP, LLC,

   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The United States of America, by and through the Department of Justice, Criminal Division, Fraud Section, and the United States Attorney's Office for the Eastern District of New York (collectively, the "Offices"), and OZ Africa Management GP, LLC (the "Defendant"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Board of Directors of Och-Ziff Holding Corporation, as general partner of OZ Management LP, the Defendant's managing member ("Board of Directors") hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

## THE DEFENDANT'S AGREEMENT

1.    Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to knowingly waive indictment and its right to challenge venue in the United States District Court for the Eastern District of New York, and to plead guilty to a one-count criminal Information charging the Defendant with conspiracy to commit offenses against the United States in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections

78dd-1 and 78dd-2 (the "Information"). The Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and other conduct related to corrupt payments, false books, records, and accounts, the failure to implement adequate internal accounting controls, investment adviser fraud, wire fraud, obstruction of justice, and money laundering, subject to applicable law and regulations, until the later of the date upon which all investigations, prosecutions and proceedings, including those involving Och-Ziff Capital Management Group LLC ("Och-Ziff"), the Defendant's ultimate parent company, arising out of such conduct are concluded (the "Term").

2. The Defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

a. An unlawful agreement between two or more individuals to violate the FCPA existed; specifically, as an agent of an issuer or as a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official, and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist the

Defendant and its co-conspirators in obtaining and retaining business for and with, and directing business to, any person;

      b.      The Defendant knowingly and willfully joined that conspiracy;

      c.      One of the members of the conspiracy knowingly committed or caused to be committed, in the Eastern District of New York or elsewhere in the United States, at least one of the overt acts charged in the Information; and

      d.      The overt acts were committed to further some objective of the conspiracy.

3.      The Defendant understands and agrees that this Agreement is between the Offices and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the Offices will bring this Agreement and the nature and quality of the conduct, cooperation and remediation of the Defendant, its direct or indirect affiliates, subsidiaries, and joint ventures, to the attention of other prosecuting authorities or other agencies, as well as debarment authorities and Multilateral Development Banks ("MDBs"), if requested by the Defendant.

4.      The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that a resolution duly adopted by the Board of Directors, in the form attached to this Agreement as Exhibit 1 ("Certificate of Corporate Resolutions"), authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Board of Directors, on behalf of the Defendant.

5.      The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

6. The Offices enter into this Agreement based on the individual facts and circumstances presented by this case and the Defendant. Among the factors considered were the following: (a) Och-Ziff and the Defendant did not voluntarily self-disclose to the Offices the misconduct that forms the basis for this Agreement; (b) Och-Ziff's cooperation with the Offices' investigation, which included Och-Ziff's Audit Committee's very thorough and comprehensive internal investigation through counsel which included regular reports to the Offices, Och-Ziff's counsel's collection and production of voluminous evidence located in foreign countries, and efforts to make current and former employees available for interviews, and also issues that resulted in a delay to the early stages of the government's investigation, including Och-Ziff's failures to produce important, responsive documents on a timely basis, and in some instances producing documents only after the Offices flagged for Och-Ziff that the documents existed and should be produced, and providing documents to other defense counsel prior to their production to the government; (c) Och-Ziff engaged in significant remediation to improve is compliance program and internal controls; (d) the seriousness of the offense misconduct including the high dollar amount of bribes to foreign officials, conduct in multiple, high-risk jurisdictions, and the fact that the bribery occurred at a high level within Och-Ziff; (e) neither Och-Ziff nor the Defendant has a prior criminal history; and (f) Och-Ziff and the Defendant have agreed to continue to cooperate with the Offices.

7. The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

    a. to plead guilty as set forth in this Agreement;

    b. to abide by all sentencing stipulations contained in this Agreement;

  c. to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

  d. to commit no further crimes;

  e. to be truthful at all times with the Court;

  f. to pay the applicable fine and special assessment; and

  g. to continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including but not be limited to the minimum elements set forth in the Corporate Compliance Program attached to this Agreement as Exhibit 2 (the "Corporate Compliance Program").

 8. Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, the Defendant agrees that in the event that, during the Term of Defendant's obligations under this Agreement, the Defendant sells, merges, or transfers all or substantially all of its business operations, or the business operations of its subsidiaries involved in the conduct described in the Information and the Statement of Facts, attached to this Agreement as Exhibit 3 (hereinafter "Statement of Facts"), as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for such sale, merger, transfer, or other change in corporate form provisions binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

 9. Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, if, during the Term of the Defendant's obligations under this Agreement, the Defendant undertakes any change in corporate form that involves business operations that are

5

material to the Defendant's consolidated operations, or to the operations of its subsidiaries involved in the conduct described in the Information and the Statement of Facts, as they exist as of the date of this Agreement, whether such transaction is structured as a sale, asset sale, merger, transfer, or other change in corporate form, the Defendant shall provide notice to the Offices at least thirty days prior to undertaking any such change in corporate form. If such transaction (or series of transactions) has the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Offices, it shall be deemed a breach of this Agreement.

10. During the Term, the Defendant shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement, the Information and the Statement of Facts, and any individual or entity referred to therein, as well as other conduct related to corrupt payments, false books, records, and accounts, the failure to implement adequate internal accounting controls, investment adviser fraud, wire fraud, obstruction of justice, and money laundering, subject to applicable law and regulations. At the request of the Offices, the Defendant shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Defendant, Och-Ziff or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct as defined above. The Defendant agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

    a. The Defendant shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of Och-Ziff and its affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal

6

or external investigations, about which the Defendant has any knowledge or about which the Offices may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Defendant.

   b. Upon request of the Offices, the Defendant shall designate knowledgeable employees, agents or attorneys to provide to the Offices the information and materials described in Paragraph 9(a) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

   c. The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

   d. With respect to any information, testimony, documents, records or other tangible evidence provided to the Offices pursuant to this Agreement, the Defendant consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Offices, in their sole discretion, shall deem appropriate.

  11. During the Term, should the Defendant learn of credible evidence or allegations of a violation of U.S. federal law, the Defendant shall promptly report such evidence or allegations to the Offices.

12. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable within ten (10) business days of sentencing, and the Defendant will not attempt to avoid or delay payment. The Defendant further agrees to pay, directly or by an affiliate, to the Clerk of the Court for the United States District Court for the Eastern District of New York the mandatory special assessment of $400 per count within ten (10) business days from the date of sentencing.

## THE UNITED STATES' AGREEMENT

13. In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Offices agree that they will not file additional criminal charges against the Defendant or any of its direct or indirect affiliates, subsidiaries, or joint ventures relating to: (a) any of the conduct described in the Information or the Statement of Facts; or (b) information made known to the Offices prior to the date of this Agreement, except for the charges specified in the Deferred Prosecution Agreement between the Offices and Och-Ziff filed simultaneously herewith (hereinafter, the "DPA"). This Paragraph does not provide any protection against prosecution for any crimes, including corrupt payments or related false books and records and failure to implement adequate internal accounting controls, made in the future by the Defendant or by any of its officers, directors, employees, agents or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement. This Agreement does not close or preclude the investigation or prosecution of any individuals, regardless of their affiliation with the Defendant. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any and all of the Defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

## FACTUAL BASIS

14. The Defendant is pleading guilty because it is guilty of the charges contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and the Statement of Facts are true and correct, that it is responsible for the acts of its officers, directors, employees, and agents described in the Information and the Statement of Facts, and that the Information and the Statement of Facts accurately reflect the Defendant's criminal conduct.

## THE DEFENDANT'S WAIVER OF RIGHTS, INCLUDING THE RIGHT TO APPEAL

15. Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Offices have fulfilled all of its obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

16. The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as provided in this Agreement. The Defendant understands that the rights of criminal defendants include the following:

    a.     the right to plead not guilty and to persist in that plea;

9

      b.    the right to a jury trial;

      c.    the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

      d.    the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

      e.    pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described below (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the Offices in this Agreement. This Agreement does not affect the rights or obligations of the Offices as set forth in Title 18, United States Code, Section 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge challenging either the conviction, or the sentence imposed in this case. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in the Information and the Statement of Facts, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any

reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of the Agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Offices are free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## PENALTY

17.     The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 15, United States Code, Section 78ff(a) and Title 18, United States Code, Section 3571(c), (d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400 per count, Title 18, United States Code, Section 3013(a)(2)(B). In this case, the parties agree that the gross pecuniary gain resulting from the offense is $91,181,182. Therefore, pursuant to 18 U.S.C. § 3571(d), the maximum fine that may be imposed is $182,362,364 per offense.

## SENTENCING RECOMMENDATION

18.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18,

11

United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 17.

19. The Offices and the Defendant agree that a faithful application of the United States Sentencing Guidelines (U.S.S.G.) to determine the applicable fine range yields the following analysis:

    a.    The 2015 USSG are applicable to this matter.

    b.    <u>Offense Level—Bribery Conduct (Highest Offense Level)</u>. Based upon USSG § 2C1.1, the total offense level is 42, calculated as follows:

| | | |
|---|---|---:|
| (a)(2) | Base Offense Level | 12 |
| (b)(1) | Multiple Bribes | +2 |
| (b)(2) | Value of benefit received more than $65,000,000 | +24 |
| (b)(3) | High Level Official Involved | +4 |
| | **Total Offense Level** | 42 |

    c.    <u>Base Fine</u>. Based upon USSG § 8C2.4(a)(2), the base fine is $91,181,182.

    d.    <u>Culpability Score</u>. Based upon USSG § 8C2.5, the culpability score is 4, calculated as follows:

| | | |
|---|---|---:|
| (a) | Base Culpability Score | 5 |
| (b)(3) | the organization had 10 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +1 |
| (g)(2) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| | **TOTAL** | 4 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $91,181,182 |
| Multipliers | 0.8 (min)/ 1.6 (max) |
| Fine Range | $72,944,946 to $145,889,891 (statutory maximum) |

20. Pursuant to the DPA, Och-Ziff, directly or through an affiliate, has agreed to pay a penalty of $213,055,689 relating to the same underlying conduct described herein and certain additional conduct. Thus, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Offices and the Defendant agree that the following represents the appropriate disposition of the case:

    a. <u>Disposition</u>. Pursuant to Fed. R. Crim, P. 11(c)(l)(C), the Offices and the Defendant agree that the appropriate disposition of this case is as set forth above, and agree to recommend jointly that the Court not impose a criminal fine on the Defendant, conditioned upon a monetary penalty in the amount of $213,055,689 paid by Och-Ziff and its affiliates under the terms specified in the DPA.

    b. <u>Mandatory Special Assessment</u>. The Defendant or one of its affiliates shall pay to the Clerk of the Court for the United States District Court for the Eastern District of New York within ten (10) days of the time of sentencing the mandatory special assessment of $400 per count.

21. This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn,

13

the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

22. The Defendant and Offices waive the preparation of a Pre-Sentence Investigation Report. The Defendant understands that the decision whether to proceed with the sentencing proceeding without a Pre-Sentence Investigation Report is exclusively that of the Court. In the event the Court directs the preparation of a Pre-Sentence Investigation Report, the Offices will fully inform the preparer of the Pre-Sentence Investigation Report and the Court of the facts and law related to the Defendant's case. At the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing hearing with adequate time for (a) any objections to the Pre-Sentence Report, and (b) consideration by the Court of the Pre-Sentence Report and the parties' sentencing submissions. The Offices will not object to and will consent to a request by the Defendant for an initial six-month adjournment of sentencing to allow time for Och-Ziff to pursue an application with the United States Department of Labor ("DOL") for a regulatory rule exemption to allow Och-Ziff to continue to act as a Qualified Professional Asset Manager under ERISA Prohibited Transaction Class Exemption 84-14. The Offices further agree that if the DOL has not ruled on Och-Ziff's application within the initial six-month adjournment, the Offices will not oppose further six-month adjournment requests by the Defendant, if the Offices, in their sole discretion, determine that Och-Ziff has diligently pursued its application with the DOL. The Defendant agrees that it may not withdraw its plea or be released from any other conditions of this plea agreement if the DOL denies the exemption or takes any action adverse to Och-Ziff or its affiliates, including the Defendant, or on account of any sentencing schedule set by the Court.

## BREACH OF AGREEMENT

23.     If the Defendant (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 10 and 11 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraph 7 of this Agreement and the Corporate Compliance Program; (e) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f) otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the term of the Agreement, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Office in the U.S. District Court for the Eastern District of New York or any other appropriate venue. Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the Offices' sole discretion. Any such prosecution may be premised on information provided by the Defendant. Any such prosecution relating to the conduct described in the Information and the Statement of Facts or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the term of the Agreement plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the term of the Agreement plus one year. The Defendant gives up all defenses based on the

15

statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Offices are made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

24. In the event the Offices determine that the Defendant has breached this Agreement, the Offices agree to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Defendant shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Offices shall consider in determining whether to pursue prosecution of the Defendant.

25. In the event that the Offices determine that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant to the Offices or to the Court, including the Information and the Statement of Facts, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom,

should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Offices.

26. The Defendant acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

## PUBLIC STATEMENTS BY THE DEFENDANT

27. The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information and the Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraphs 23 to 26 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information or the Statement of Facts will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Offices. If the Offices determine that a public statement by any such person contradicts in whole or in part a statement contained in the Information or the Statement of Facts, the Offices shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly

17

repudiating such statement(s) within five (5) business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

28.     The Defendant agrees that if it or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Offices to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Offices and the Defendant; and (b) whether the Offices have any objection to the release or statement.

## COMPLETE AGREEMENT

29.     This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

AGREED:

FOR OZ AFRICA MANAGEMENT GP, LLC:

_____        _____
Joel M. Frank                                              Mark K. Schonfeld, Esq.
OZ Africa Management GP, LLC              Joel M. Cohen, Esq.
                                                                  Lee G. Dunst, Esq.
                                                                  F. Joseph Warin, Esq.
                                                                  Gibson Dunn & Crutcher LLP
                                                                  Counsel to OZ Africa Management GP, LLC

Date: 9/29/16

FOR THE U.S. DEPARTMENT OF JUSTICE:

ROBERT CAPERS                                   SANDRA MOSER
United States Attorney                           Principal Deputy Chief
Eastern District of New York               Criminal Division, Fraud Section
                                                                  U.S. Department of Justice

_____        _____
James P. Loonam                                   Leo R. Tsao, Assistant Chief
Jonathan P. Lax                                     James P. McDonald, Trial Attorney
David Pitluck
Assistant U.S. Attorneys

Date: 9/29/16