# Exhibit 52

Government of Canada Gouvernement du Canada

# Certificate of Arrangement

# Certificat d'arrangement

***Canada Business Corporations Act***

***Loi canadienne sur les sociétés par actions***

**AFRICO RESOURCES LTD.**

**435867-8**

Corporate name(s) of CBCA applicants / Dénomination(s) sociale(s) de la ou des sociétés LCSA requérantes

Corporation number(s) / Numéro(s) de la ou des sociétés

I HEREBY CERTIFY that the arrangement set out in the attached articles of arrangement has been effected under section 192 of the *Canada Business Corporations Act.*

JE CERTIFIE que l'arrangement mentionné dans les clauses d'arrangement annexées a pris effet en vertu de l'article 192 de la *Loi canadienne sur les sociétés par actions.*

Virginie Ethier

Virginie Ethier

Director / Directeur

2016-07-06

Date of Arrangement (YYYY-MM-DD)
Date de l'arrangement (AAAA-MM-JJ)

Canada

Industry Canada Industrie Canada

# *Canada Business Corporations Act* (CBCA)
## FORM 14.1
## ARTICLES OF ARRANGEMENT
## (Section 192)

| 1- Name of the applicant corporation(s) | Corporation number |
|---|---|
| AFRICO RESOURCES LTD. | 435867-8 |

| 2 - Name of the corporation(s) the articles of which are amended, if applicable | Corporation number |
|---|---|
| | |

| 3 - Name of the corporation(s) created by amalgamation, if applicable | Corporation number |
|---|---|
| | |

| 4 - Name of the dissolved corporation(s), if applicable | Corporation number |
|---|---|
| | |

| 5 - Name of the other bodies corporate involved, if applicable | Corporation number or jurisdiction |
|---|---|
| CAMROSE RESOURCES LIMITED | BRITISH VIRGIN ISLANDS |

6 - In accordance with the order approving the arrangement, the plan of arrangement attached hereto, involving the above named body(ies) corporate, is hereby effected.

In accordance with the plan of arrangement,

☐ a. the articles of the corporation(s) indicated in item 2, are amended.

If the amendment includes a name change, indicate the change below:

☐ b. the following bodies corporate and/or corporations are amalgamated (*for CBCA corporations include the corporation number*):

☐ c. the corporation(s) indicated in item 4 is(are) liquidated and dissolved:

7 - I hereby certify that I am a director or an authorized ~~officer of one of~~ the applicant corporations.

Signature [signature]

Print name Chris Theodoropoulis

**Note:** Misrepresentation constitutes an offence and, on summary conviction, a person is liable to a fine not exceeding $5,000 or to imprisonment for a term not exceeding six months or to both (subsection 250(1) of the CBCA).



JUL 06 2016

Canada

# PLAN OF ARRANGEMENT

## PLAN OF ARRANGEMENT UNDER SECTION 192 OF THE CANADA BUSINESS CORPORATIONS ACT

## ARTICLE I
## INTERPRETATION

### Section 1.01 Definitions

Unless indicated otherwise, capitalized terms used in this Plan of Arrangement but not defined will have the meanings specified in the Arrangement Agreement and the following terms will have the following meanings (and grammatical variations of such terms will have corresponding meanings):

"**Affected Securityholders**" means the Company Shareholders.

"**Arrangement**" means the arrangement under Section 192 of the CBCA on the terms and subject to the conditions set out in this Plan of Arrangement, subject to any amendments or variations made in accordance with the terms of the Arrangement Agreement or Section 5.01 of this Plan of Arrangement or made at the direction of the Court in the Final Order with the prior written consent of the Company and Camrose, each acting reasonably.

"**Arrangement Agreement**" means the arrangement agreement made as of May 13, 2016 among Camrose and the Company (including the Schedules thereto) as it may be amended, restated, supplemented or novated from time to time in accordance with its terms.

"**Arrangement Resolution**" means the special resolution approving this Plan of Arrangement to be considered at the Company Meeting by the Company Shareholders.

"**Articles of Arrangement**" means the articles of arrangement of the Company in respect of the Arrangement, required by the CBCA to be sent to the Director after the Final Order is made, which will include this Plan of Arrangement and otherwise be in a form and content satisfactory to the Company and Camrose, each acting reasonably.

"**Business Day**" means any day, other than a Saturday, a Sunday or a statutory or civic holiday in Toronto, Ontario or Vancouver, British Columbia.

"**Camrose**" means Camrose Resources Limited, a corporation existing under the laws of the British Virgin Islands.

"**CBCA**" means the *Canada Business Corporations Act* and the regulations made thereunder, as promulgated or amended from time to time;

"**Certificate of Arrangement**" means the certificate of arrangement issued by the Director pursuant to subsection 192(7) of the CBCA in respect of the Articles of Arrangement.

"**Change of Control of the Company Material Property**" has the meaning attributed to it in the Arrangement Agreement.

"**Closing Payment Amount**" means $1.00 per Company Share (other than those held by Camrose).

"**Company**" means Africo Resources Ltd., a corporation existing under the laws of Canada.

"**Company Circular**" means, as the context requires, the notice of the Company Meeting and accompanying management Company Circular, including all schedules, appendices and exhibits thereto and enclosures therewith, to be sent to the Company Shareholders in connection with the Company Meeting, as amended, supplemented or otherwise modified from time to time.

"**Company Material Property Payment**" means US$7.5 million divided by the number of Common Shares and Options. outstanding immediately prior to the Effective Time (other than those held by Camrose).

"**Company Meeting**" means the special meeting of Company Shareholders, including any adjournment or postponement thereof, to be called and held in accordance with the Interim Order to consider the Arrangement Resolution.

"**Company Public Documents**" means all forms, reports, schedules, statements and other documents filed by the Company on SEDAR since December 31, 2014.

"**Company Shares**" means the common shares in the capital of the Company.

"**Company Shareholders**" means the holders of Company Shares (other than Camrose).

"**Company Stock Option Plan**" means the stock option plan of the Company.

"**Company Options**" means the outstanding options to purchase Company Shares granted under the Company Stock Option Plan.

"**Consideration Loan**" has the meaning specified in Section 4.01 of this Plan of Arrangement.

"**Court**" means the Ontario Superior Court of Justice (Commercial List).

"**Depositary**" means TMX Equity Transfer Services Inc.

"**Director**" means the Director appointed pursuant to Section 260 of the CBCA.

"**Dissent Rights**" has the meaning specified in Section 3.01 of this Plan of Arrangement.

"**Dissenting Holder**" means a registered holder of Company Shares who has validly exercised its Dissent Rights and has not withdrawn or been deemed to have withdrawn such exercise of Dissent Rights, but only in respect of the Company Shares in respect of which Dissent Rights are validly exercised by such registered holder of Company Shares.

"**Effective Date**" means the date upon which the Arrangement becomes effective as established by the date of issue shown on the certificate giving effect to the Arrangement issued by the Director pursuant to the CBCA.

"**Effective Time**" means 12:01 a.m. (Toronto time) on the Effective Date, or such other time as the Parties agree to in writing before the Effective Date.

"**Final Order**" means the final order of the Court, in a form acceptable to the Company and Camrose, each acting reasonably, approving the Arrangement, as such order may be amended by the Court (with the consent of both the Company and Camrose, each acting reasonably) at any time prior to the Effective Date or, if appealed, then, unless such appeal is withdrawn or denied, as affirmed or as amended (provided that any such amendment is acceptable to both the Company and Camrose, each acting reasonably) on appeal.

"**Former Holders**" means the holders of Options and Company Shares immediately prior to the Effective Time who have not exercised Dissent Rights.

"**Governmental Entity**" means: (a) any multinational, federal, provincial, territorial, state, regional, municipal, local or other government, governmental or public department, central bank, court, tribunal, arbitral body, commission, board, ministry bureau, agency or entity, domestic or foreign; (b) any stock exchange, including the TSX; (c) any subdivision, agent, commission, board or authority of any of the foregoing; or (d) any quasi-governmental or private body, including any tribunal, commission, regulatory agency or self-regulatory organization, exercising any regulatory, expropriation or taxing authority under or for the account of any of the foregoing.

"**Interim Order**" means the interim order of the Court in a form acceptable to the Company and Camrose, each acting reasonably, providing for, among other things, the calling and holding of the Company Meeting, as such order may be amended by the Court with the consent of the Company and Camrose, each acting reasonably.

"**Law**" or "**Laws**" means all laws (including common law), by-laws, statutes, rules, regulations, principles of law and equity, orders, rulings, ordinances, judgments, injunctions, determinations, awards, decrees or other requirements, whether domestic or foreign, and the terms and conditions of any Permit of or from any Governmental Entity or self-regulatory authority (including the TSX), and the term "applicable" with respect to such Laws and in a context that refers to a Party, means such Laws as are applicable to such Party and/or its Subsidiaries or their business, undertaking, property or securities and emanate from a Person having jurisdiction over the Party and/or its Subsidiaries or its or their business, undertaking, property or securities.

"**Liens**" means any hypothecs, mortgages, pledges, assignments, liens, charges, security interests, encumbrances and adverse rights or claims, other third party interest or encumbrance of any kind, whether contingent or absolute, and any agreement, option, right or privilege (whether by Law, contract or otherwise) capable of becoming any of the foregoing.

"**Letter of Transmittal**" means the letter of transmittal sent to holders of Company Shares for use in connection with the Arrangement.

"**Person**" includes an individual, partnership, association, body corporate, trustee, executor, administrator, legal representative, government (including any Governmental Entity) or any other entity, whether or not having legal status.

"**Plan of Arrangement**" means this plan of arrangement, and any amendments or variations made in accordance with Section 8.4 of the Arrangement Agreement or Section 5.01 of this plan of arrangement or made at the direction of the Court in the Final Order with the prior written consent of the Company and Camrose, each acting reasonably.

"**SEDAR**" means the System for Electronic Document Analysis and Retrieval.

"**Shareholder Representative**" means George R. Ireland.

"**Tax Act**" means the *Income Tax Act* (Canada) and the regulations made thereunder, as now in effect and as they may be promulgated or amended from time to time.

**Section 1.02 Certain Rules of Interpretation**

In this Plan of Arrangement, unless otherwise specified:

(a) **Headings, etc.** The division of this Plan of Arrangement into Articles and Sections and the insertion of headings are for convenient reference only and do not affect the construction or interpretation of this Plan of Arrangement.

(b) **Currency.** All references to dollars or to $ are references to Canadian dollars.

(c) **Gender and Number.** Any reference to gender includes all genders. Words importing the singular number only include the plural and vice versa.

(d) **Certain Phrases, etc.** The words (i) "including", "includes" and "include" mean "including (or includes or include) without limitation," and (ii) unless stated otherwise, "Article", "Section", and "Schedule" followed by a number or letter mean and refer to the specified Article or Section of or Schedule to this Plan of Arrangement.

(e) **Statutes.** Any reference to a statute refers to such statute and all rules and regulations made under it, as it or they may have been or may from time to time be amended or re-enacted, unless stated otherwise.

(f) **Computation of Time.** A period of time is to be computed as beginning on the day following the event that began the period and ending at 4:30 p.m. on the last day of the period, if the last day of the period is a Business Day, or at 4:30 p.m. on the next Business Day if the last day of the period is not a Business Day. If the date on which any action is required or permitted to be taken under this Plan of Arrangement by a Person is not a Business Day, such action will be required or permitted to be taken on the next succeeding day which is a Business Day.

(g) **Time References.** References to time are to local time, Toronto, Ontario.

## ARTICLE II
## THE ARRANGEMENT

### Section 2.01 Arrangement Agreement

This Plan of Arrangement is made pursuant to, is subject to the provisions of, and forms part of the Arrangement Agreement.

### Section 2.02 Binding Effect

This Plan of Arrangement and the Arrangement, upon the filing of the Articles of Arrangement and the issuance of the Certificate of Arrangement, will become effective, and be binding on Camrose, the Company, all registered and beneficial Company Shareholders and all registered and beneficial owners of Company Options, at and after, the Effective Time without any further act or formality required on the part of any Person.

### Section 2.03 Arrangement

At the Effective Time each of the following events will occur and will be deemed to occur sequentially as set out below without any further authorization, act or formality, in each case, unless stated otherwise, effective as at five minute intervals starting at the Effective Time:

(a) each Company Share held by Dissenting Holders in respect of which Dissent Rights have been validly exercised will be, and be deemed to have been, assigned and transferred, without any further act or formality, by the Dissenting Holder thereof, to Camrose (free and clear of all Liens) in consideration for a debt claim against Camrose for the amount determined in accordance with Article III, and:

(i) such Dissenting Holders will cease to be the holders of such Company Shares and to have any rights as holders of such Company Shares other than the right to be paid the fair value for such Company Shares as set out in Section 3.01;

(ii) such Dissenting Holders' names will be removed from the register of Company Shares maintained by or on behalf of the Company; and

(iii) Camrose will be, and be deemed to be, the transferee of such Company Shares (free and clear of all Liens) and will be entered in the register of Company Shares maintained by or on behalf of the Company;

(b) each Company Share outstanding immediately prior to the Effective Time, other than (i) a Company Share held by a Dissenting Holder who has validly exercised such holder's Dissent Right, and (ii) a Company Share held by Camrose or any affiliate thereof, will be, and be deemed to have been, assigned and transferred, without any further act of formality, by the holder thereof to Camrose (free and clear of all Liens) in exchange for the Closing Payment Amount for each Company Share, and:

(i) the holders of such Company Shares will cease to be the holders thereof and to have any rights as holders of such Company Shares other than the right to be paid (i) the Closing Payment Amount per Company Share; and (ii) in the event of a Change of Control of the Company Material Property, the pro rata share of the Company Material Property Payment, in accordance with this Plan of Arrangement;

(ii) such holders' names will be removed from the register of Company Shares maintained by or on behalf of the Company; and

(iii) Camrose will be, and be deemed to be, the transferee of such Company Shares (free and clear of all Liens) and will be entered in the register of the Company Shares maintained by or on behalf of the Company; and

(c) with respect to the Company Options:

(i) each Company Option outstanding immediately prior to the Effective Time (whether vested or unvested), notwithstanding the terms of the Stock Option Plan, shall be deemed to be unconditionally vested and exercisable, and such Company Option shall, without any further action by or on behalf of a Company Optionholder, be deemed to be assigned and transferred by such holder to the Company in exchange for (i) a cash payment from the Company equal to the amount (if any) by which the Closing Payment Amount per Company Share exceeds the exercise price of such Company Option, less applicable withholdings, and (ii) in the event of a Change of Control of the Company Material Property, a right to receive a pro rata share of the Company Material Property Payment, in accordance with this Plan of Arrangement;

(ii) the holder of each Company Option will cease to be the holder thereof or to have any rights as a holder in respect of such Company Option or under the Company Stock Option Plan and the name of the holder thereof will be removed from the applicable securities register of the Company with respect to such Company Option; and

(iii) the Company Stock Option Plan shall be terminated and neither the Company nor Camrose or any of their respective affiliates or successors will have any liability in respect thereof.

## ARTICLE III
## DISSENT RIGHTS

**Section 3.01 Dissent Rights**

Registered Company Shareholders may exercise dissent rights with respect to the Company Shares held by such holders ("**Dissent Rights**") in connection with the Arrangement pursuant to and in the manner set forth in Section 190 of the CBCA, as modified by the Interim Order, the Final Order and this Section 3.01; provided that, notwithstanding subsection 190(5) of the CBCA, the written objection to the Arrangement Resolution referred to in subsection 190(5) of the CBCA must be received by the Company not later than 5:00 p.m. (Toronto time) two

Business Days immediately preceding the date of the Meeting (as it may be adjourned or postponed from time to time). Dissenting Holders who duly exercise their Dissent Rights will be deemed to have transferred the Company Shares held by them and in respect of which Dissent Rights have been validly exercised to Camrose (free and clear of all Liens), as provided in Section 2.03(a) and if they:

(a) ultimately are entitled to be paid fair value for such Company Shares:

(i) will be deemed not to have participated in the transactions in Article II (other than Section 2.03(a));

(ii) will be entitled to be paid the fair value of such Company Shares which fair value, notwithstanding anything to the contrary contained in Part XV of the CBCA, will be determined as of the close of business on the day before the Arrangement Resolution was adopted; and

(iii) will not be entitled to any other payment or consideration, including any payment that would be payable under the Arrangement had such holders not exercised their Dissent Rights in respect of such Company Shares; or

(b) ultimately are not entitled, for any reason, to be paid fair value for such Company Shares will be deemed to have participated in the Arrangement on the same basis as a non-dissenting holder of Company Shares.

**Section 3.02 Recognition of Dissenting Holders**

(a) In no circumstances will Camrose, the Company or any other Person be required to recognize a Person exercising Dissent Rights unless such Person is the registered holder of those Company Shares in respect of which such rights are sought to be exercised.

(b) For greater certainty, in no case will Camrose, the Company or any other Person be required to recognize Dissenting Holders as holders of Company Shares in respect of which Dissent Rights have been validly exercised after the completion of the transfer under Section 2.03(a), and the names of such Dissenting Holders will be removed from the registers of holders of Company Shares in respect of which Dissent Rights have been validly exercised at the same time as the event described in Section 2.03(a) occurs. In addition to any other restrictions under Section 190 of the CBCA, holders of Company Shares who vote or have instructed a proxyholder to vote such Company Shares in favour of the Arrangement Resolution (but only in respect of such Company Shares) will not be entitled to exercise Dissent Rights.

## ARTICLE IV
## CERTIFICATES AND PAYMENTS

**Section 4.01 Payment of Consideration**

(a) Prior to the filing of the Articles of Arrangement, the Company shall loan to Camrose, cash in the aggregate amount equal to the payments required by this Plan of Arrangement to pay the Closing Payment Amount, with the amount per Company Share in respect of which Dissent Rights have been exercised being deemed to be the Closing Payment Amount per Company Share for this purpose, net of applicable withholdings (the "**Consideration Loan**") and Camrose will deposit or arrange to be deposited with the Depositary, for the benefit of Company Shareholders, cash in an amount equal to the Consideration Loan. The cash deposited with the Depositary by or on behalf of Camrose will be held in an interest-bearing account, and any interest earned on such funds will be for the account of Camrose.

(b) The Purchaser shall, if and when any amount of the Company Material Property Payment becomes payable to the Former Holders pursuant to the Arrangement Agreement, cause to be deposited

with the Depositary for the benefit of the Former Holders entitled to receive such Company Material Property Payment, US$7.5 million, and the Depositary will deliver to the Former Holders, the cash which such Former Shareholders have the right to receive under the Arrangement less any amounts withheld pursuant to Section 4.03. The Shareholder Representative, without any personal liability, shall be provided prompt notice by Camrose of any Change of Control of the Company Material Property during the 14 month period following the Effective Date or, following the end of such 14 month period, a certificate from the Chief Executive Officer and Chief Financial Officer of Camrose confirming that a Change of Control of the Company Material Property has not occurred.

(c) Upon surrender to the Depositary for cancellation of a certificate which immediately prior to the Effective Time represented outstanding Company Shares that were transferred pursuant to Section 2.03(b), together with a duly completed and executed Letter of Transmittal and such additional documents and instruments as the Depositary may reasonably require, the holder of Company Shares represented by such surrendered certificate will be entitled to receive in exchange therefor, and the Depositary will deliver to such holder, the cash which such holder has the right to receive under the Arrangement for such Company Shares less any amounts withheld pursuant to Section 4.03, and any certificate so surrendered will forthwith be cancelled.

(d) Until surrendered as contemplated by this Section 4.01, each certificate that immediately prior to the Effective Time represented Company Shares will be deemed after the Effective Time to represent only the right to receive upon such surrender a cash payment in lieu of such certificate as contemplated in this Section 4.01, less any amounts withheld pursuant to Section 4.03. Any such certificate formerly representing Company Shares not duly surrendered on or before the sixth anniversary of the Effective Date will cease to represent a claim by or interest of any former holder of Company Shares of any kind or nature against or in the Company or Camrose. On such date, all cash to which such former holder was entitled will be deemed to have been surrendered to Camrose or the Company, as applicable, and will be paid over by the Depositary to Camrose or as directed by Camrose.

(e) The Company and Camrose will cause the Depositary, as soon as a former holder of Company Shares becomes entitled to a net cash payment in accordance with Section 4.01(b) and Section 4.01(c), as applicable, to:

(i) forward or cause to be forwarded by first class mail (postage paid) to such former holder of Company Shares at the address specified by such former holder;

(ii) if requested by such former holder of Company Shares, make available at the offices of the Depositary for pick-up by such former holder; or

(iii) if such former holder of Company Shares neither specifies an address as described in Section 4.01(e)(i) nor provides a request as described in Section 4.01(e)(ii), forward or cause to be forwarded by first class mail (postage paid) to such former holder at the address of such former holder as shown on the applicable securities register maintained by or on behalf of the Company immediately prior to the Effective Time;

a cheque representing the net cash payment, if any, payable to such former holder in accordance with the provisions hereof.

(f) Any payment made by way of cheque by the Depositary (or the Company, if applicable) pursuant to this Plan of Arrangement that has not been deposited or has been returned to the Depositary (or the Company) or that otherwise remains unclaimed, in each case, on or before the sixth anniversary of the Effective Time, and any right or claim to payment hereunder that remains outstanding on the sixth anniversary of the Effective Time will cease to represent a right or claim of any kind or nature and the right of the holder to receive the applicable consideration for the

Company Shares pursuant to this Plan of Arrangement will terminate and be deemed to be surrendered and forfeited to Camrose or the Company, as applicable, for no consideration.

(g) No holder of Company Shares will be entitled to receive any consideration with respect to such Company Shares other than the cash payment(s), to which such holder is entitled to receive in accordance with Section 2.03 and this Section 4.01 and, for greater certainty, no such holder will be entitled to receive any interest, dividends, premium or other payment in connection therewith.

**Section 4.02 Lost Certificates**

In the event any certificate that immediately prior to the Effective Time represented one or more outstanding Company Shares that were transferred pursuant to Section 2.03 will have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the Person claiming such certificate to be lost, stolen or destroyed, the Depositary will pay to such holder, in exchange for such lost, stolen or destroyed certificate, the cash which such holder has the right to receive under the Arrangement for such Company Shares, deliverable in accordance with such holder's Letter of Transmittal. When authorizing such payment in exchange for any lost, stolen or destroyed certificate, the Person to whom such cash is to be delivered will, as a condition precedent to the delivery of such cash, give a bond satisfactory to the Company, Camrose and the Depositary (acting reasonably) in such sum as Camrose may direct, or otherwise indemnify Camrose and the Company in a manner satisfactory to Camrose and the Company, acting reasonably, against any claim that may be made against Camrose or the Company with respect to the certificate alleged to have been lost, stolen or destroyed.

**Section 4.03 Withholding Rights**

Camrose, the Company or the Depositary, as applicable, will be entitled to deduct and withhold from any consideration otherwise payable or otherwise deliverable to any Affected Securityholders under the Plan of Arrangement such amounts as Camrose, the Company or the Depositary, as applicable, are required or reasonably believe to be required to deduct and withhold from such consideration under any provision of any Laws in respect of Taxes. Any such amounts will be deducted, withheld and remitted from the consideration payable pursuant to the Plan of Arrangement, provided that such deducted and withheld amounts are actually remitted to the appropriate Governmental Entity in accordance with applicable Law, be treated for all purposes under this Agreement as having been paid to the Affected Securityholders in respect of which such deduction, withholding and remittance was made.

**Section 4.04 No Liens**

Any exchange or transfer of securities pursuant to this Plan of Arrangement will be free and clear of any Liens or other claims of third parties of any kind.

**Section 4.05 Paramountcy**

From and after the Effective Time: (a) this Plan of Arrangement will take precedence and priority over any and all Company Shares and Company Options issued or outstanding prior to the Effective Time, (b) the rights and obligations of each of the holders of Company Shares and Company Options, the Company, Camrose, the Depositary and any transfer agent or other depositary therefor in relation thereto, will be solely as provided for in this Plan of Arrangement, and (c) all actions, causes of action, claims or proceedings (actual or contingent and whether or not previously asserted) based on or in any way relating to any Company Shares or Company Options will be deemed to have been settled, compromised, released and determined without liability except as set forth in this Plan of Arrangement.

## ARTICLE V
## AMENDMENTS

**Section 5.01 Amendments to Plan of Arrangement**

(a) The Company and Camrose may amend, modify and/or supplement this Plan of Arrangement in accordance with Arrangement Agreement at any time and from time to time prior to the Effective

Time, provided that each such amendment, modification and/or supplement must (i) be set out in writing, (ii) be approved by the Company and Camrose, each acting reasonably, (iii) made following the Meeting, approved by the Court, and (iv) communicated to the Former Shareholders and each holder of Company Options if and as required by the Court.

(b) Any amendment, modification or supplement to this Plan of Arrangement made in accordance with the Arrangement Agreement may be proposed by the Company at any time prior to the Meeting (provided that Camrose will have consented thereto) with or without any other prior notice or communication, and if so proposed and accepted by the Persons voting at the Meeting (other than as may be required under the Interim Order), will become part of this Plan of Arrangement for all purposes.

(c) Any amendment, modification or supplement to this Plan of Arrangement that is approved or directed by the Court following the Meeting will be effective only if (i) it is consented to in writing by each of the Company and Camrose (in each case, acting reasonably), and (ii) if required by the Court, it is consented to by some or all of the Affected Securityholders voting in the manner directed by the Court.

(d) Any amendment, modification or supplement to this Plan of Arrangement may be made following the Effective Date unilaterally by Camrose, provided that it concerns a matter which, in the reasonable opinion of Camrose, is of an administrative nature required to better give effect to the implementation of this Plan of Arrangement.

## ARTICLE VI
## FURTHER ASSURANCES

**Section 6.01 Further Assurances**

Notwithstanding that the transactions and events set out in this Plan of Arrangement will occur and will be deemed to occur in the order set out in this Plan of Arrangement without any further act or formality, each of the parties to the Arrangement Agreement will make, do and execute, or cause to be made, done and executed, all such further acts, deeds, agreements, transfers, assurances, instruments or documents as may reasonably be required by either of them in order to further document or evidence any of the transactions or events set out in this Plan of Arrangement.

Court File No. CV-16-11402-00CL

ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | THURSDAY, THE 30TH |
| | ) | |
| JUSTICE CONWAY | ) | DAY OF JUNE, 2016 |

**IN THE MATTER OF AN APPLICATION UNDER SECTION 192 OF THE *CANADA BUSINESS CORPORATIONS ACT*, R.S.C. 1985, c. C-44, AS AMENDED, AND RULES 14.05(2) AND 14.05(3) OF THE *RULES OF CIVIL PROCEDURE***

**AND IN THE MATTER OF A PROPOSED PLAN OF ARRANGEMENT INVOLVING AFRICO RESOURCES LTD. AND CAMROSE RESOURCES LIMITED**

## O R D E R

**THIS APPLICATION** made by the Applicant Africo Resources Ltd. ("**Africo**") pursuant to section 192 of the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended, (the "**CBCA**") was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Application issued on May 20, 2016 and the affidavit of Christos Theodoropoulos sworn May 25, 2016, together with the exhibits thereto, the supplementary affidavit of Christos Theodoropoulos sworn June 29, 2016, together with the exhibits thereto, the affidavit of David Spence sworn June 29, 2016, together with the exhibit thereto, and the Interim Order of the Honourable Justice Newbould dated May 31, 2016, and;

**ON HEARING** the submissions of counsel for Africo and counsel for Camrose Resources Limited, and on being advised that the Director appointed under the CBCA does not consider it necessary to appear on this application, no-one appearing for any other person, including any shareholder of Africo, and having determined that the Arrangement, as described in the Plan of Arrangement attached as Schedule "**A**" to this order is an arrangement for the purposes of section 192 of the CBCA and is fair and reasonable in accordance with the requirements of that section,

1. **THIS COURT ORDERS** that the Arrangement, as described in the Plan of Arrangement attached as Schedule "A" to this order, shall be and is hereby approved.

2. **THIS COURT ORDERS** that the Applicant shall be entitled to seek leave to vary this order upon such terms and upon giving such notice as this court may direct, to seek the advice and directions of this court as to the implementation of this order, and to apply for such further order or orders as may be appropriate.

Conway J.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO:

JUN 30 2016

PER / PAR:

IN THE MATTER OF AN APPLICATION UNDER SECTION 192 OF THE *CANADA BUSINESS CORPORATIONS ACT*, R.S.C. 1985, c. C-44, AS AMENDED, AND RULES 14.05(2) AND 14.05(3) OF THE *RULES OF CIVIL PROCEDURE*

AND IN THE MATTER OF A PROPOSED PLAN OF ARRANGEMENT INVOLVING AFRICO RESOURCES LTD. AND CAMROSE RESOURCES LIMITED

Court File No. CV-16-11402-00CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

ORDER

STIKEMAN ELLIOTT LLP
Barristers & Solicitors
5300 Commerce Court West
199 Bay Street
Toronto, Canada M5L 1B9

**Alexander D. Rose LSUC#: 49415P**
*arose@stikeman.com*
Tel: (416) 869-5261
**David Spence LSUC# 64625R**
*dspence@stikeman.com*
Tel: (416) 869-5689
Fax: (416) 947-0866

Lawyers for the Applicant,
Africo Resources Ltd.